IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT COURT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| IN RE: Lion Air Flight JT 610 Crash<br><br>**MOELJONO KHAN, individually;** as Personal Representative of the Estate of **PERMADI ANGGRIMULJA;** and as next friend of his minor child **A.R.N.**,<br><br>Plaintiff,<br>v.<br><br>**THE BOEING COMPANY, a Delaware Corporation; ROSEMOUNT AEROSPACE, INC., a Delaware Corporation; ROCKWELL COLLINS, INC., a Delaware Corporation; RAYTHEON TECHNOLOGIES CORPORATION, a Delaware Corporation; GOODRICH CORPORATION., a Delaware Corporation; XTRA AEROSPACE LLC, a THE UNITED STATES OF AMERICA and its subordinate agencies THE DEPARTMENT OF TRANSPORTATION and THE FEDERAL AVIATION ADMINISTRATION,**<br><br>Defendants. | Case No.: 1:20-cv-05773<br>Main Case No. 1:18-cv-07686<br><br>Assigned To: Hon. Thomas M. Durkin<br><br>PLAINTIFF MOELJONO KHAN'S REPLY TO TANDINA SUKARNO PUTRI'S OPPOSITION TO MOTION FOR URGENT COURT INTERVENTION |

PLAINTIFF MOELJONO KHAN'S REPLY TO TANDINA SUKARNO PUTRI'S OPPOSITION TO
MOTION FOR URGENT COURT INTERVENTION

**TABLE OF CONTENTS**

| | | |
|---|---|---:|
| I. | INTRODUCTION | 1 |
| II. | FACTUAL BACKGROUND AND PROCEDURAL HISTORY | 2 |
| | A. Procedural History | 3 |
| | B. Ribbeck's Longstanding Plan to Leverage Client Representation with The Threat of Minor Emancipation | 3 |
| | C. Ribbeck Used Delay Tactics to Buy Time for A Sham Emancipation Plan | 4 |
| | D. Following Months of Delay, Ribbeck Unveils the Purported Underage Marriage of A 17-Year-Old Teenager to A 16-Year-Old Girl | 4 |
| III. | ARGUMENT | 5 |
| | A. Plaintiff Moeljono Khan is still A.R.N.'s Legal Guardian Because A.R.N. has not reached the Age of Majority, and Is Not Legally Married Under Indonesian Law | 5 |
| |    1. Plaintiff Khan's Legal Guardianship of A.R.N. has Been Fully Litigated to Completion in Both the Indonesian Court and Indonesian Court of Appeal | 6 |
| |    2. A.R.N.'s Purported Marriage Attempt Does Not Comply with the Requirements of Underage Marriage Under Indonesian Law. | 8 |
| |    3. The Purported Letter from the Indonesian Ministry of Religious Affairs Submitted by Ribbeck is a Forgery and Should be Excluded | 9 |
| |    4. The Court Should Not Tolerate any Further Delay from Ribbeck Law | 10 |
| | B. The Expert Witness for the Ribbeck Firm Should be Disqualified | 11 |
| | C. The Court Should Issue an Order Enjoining Ribbeck And His Agents from Further Ex Parte Contact with A.R.N., who is Represented by SNS and ILG | 12 |
| | D. The Court Should Sanction Ribbeck for Its Conduct to Ensure that the Misconduct Does Not Continue | 13 |
| | E. Under Illinois Law, Minor A.R.N. Has Not Reached Age of Consent | 13 |
| IV. | CONCLUSION | 14 |

I. **INTRODUCTION**

In simple terms, there is no legal or factual basis for the emancipation of minor A.R.N. From start to finish, counsel for the surviving stepmother and their local affiliates in Indonesia have waged what responding counsel believe to be a bad faith campaign to interlope and interfere with the representation of minor. This campaign began with an improper *ex parte* contact (not by the decedent's wife but by self-stated agents of the Ribbeck firm) within days of Counselor Sanjiv Singh and Counselor Michael Indrajana being engaged, and then culminated in delay after delay as the Ribbeck firm and its affiliates (hereinafter "Ribbeck") attempted to delay settlement so they could craft what appears to be an *ex parte,* unethical plan to attempt to assert representation of a minor without legal authorization. The final salvo of what appears to be improper, extended *ex parte* interference is a purported marriage by minors with the desired effect of attempting to establish the minor A.R.N.'s authority to enter into a retainer agreement with Ribbeck.

Fortunately, responding counsel had the resources and knowledge to thwart this improper and unethical end-run around the law and ethical rules in both Indonesia and the United States. As set forth below, based on intensive investigation and the expert opinion of two of Indonesia's preeminent legal minds, responding counsel will show that: (i) the purported marriage of minor A.R.N. and minor is null and void and the evidence submitted has been verified, by agents of the Indonesian government, to be an outright fraud. How Mr. Ribbeck and his agents obtained the seal and used it in this manner is extremely concerning, but regardless of how, the marriage certificate is a sham; (ii) because the marriage certificate is a sham and the marriage null and void, there can be no emancipation of the minor A.R.N. under Indonesian law; and (iii) because minor A.R.N. is not emancipated, under both Indonesian and US law, he is a minor and cannot enter into a contract for legal representation without the consent of an adult. A.R.N. did not have consent of his legal guardian Plaintiff Moeljono to enter into an agreement with Ribbeck. Mr. Ribbeck knew that as the issues of Indonesian law are unequivocal on age of consent, as experts will opine below, and even the purported sham marriage did not occur until this last week. As

such, it now appears clear that there was true unauthorized *ex parte* contact carried out in what appears to be bad faith for the singular purpose of attorneys' fees. As stated at the first hearing and in the first briefing, Plaintiff Moeljono, the current legal guardian, had stated through his counsel his commitment that no adult would use the minor's funds. There was therefore no reason to delay settlement, and what appear to be *ex parte* antics have now cost the minor lost interest that he could have been earning had this matter been settled in a timely manner.

For these reasons, as set forth in greater detail below, the Court should find the marriage of 17 year old minor A.R.N. to 16 year old minor A.R.T.H. to have no legal effect, and should conclude that there has never been a legally effective emancipation. As such, since the guardian order remains unappealed and unopposed, Plaintiff Moeljono is the only legally recognized legal guardian and has clearly authorized representation of the minor by current counsel. As such, the time is now to settle this case. The conduct, including what the Government of Indonesia deems outright forgery and what appears to be abusive conduct vis a vis minors (i.e., encouraging the marriage of minors including a 16-year-old female), should not be tolerated.

In addition to responding so that the Court may rule expeditiously on the issue of emancipation and representation of the minor A.R.N, Plaintiff Khan hereby now moves the court for the following relief in addition to requesting that the court resolve this matter: (i) exclude the testimony of Ribbeck's purported expert or disqualify the expert who literally appears to be an unqualified general litigator who wrote a letter, not a formal legal opinion; and (ii) issue an order to Manuel Ribbeck to show cause for apparent ethical misconduct in repeatedly contacting a minor client without authorization culminating in what the Government of Indonesia has deemed to be falsified documents.

## II.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff Khan fully incorporates the previously submitted brief summary of facts from the original Motion. ECF No. 14, Section I(A)-(E). In this Reply brief, the following procedural history and additional facts are either dispositive or essential background for the Court's understanding and final ruling in this matter:

### A. Procedural History

On December 28, 2020, Plaintiff Tandina Sukarno Putri vis-à-vis Ribbeck filed a Motion for Substitution of Attorney for the minor A.R.N., arguing that the minor A.R.N. is emancipated from his legal guardian Plaintiff Moeljono Khan, and asserting that the 17-year-old was appointing Ribbeck as his counsel. Main Case No. 18-cv-07686, ECF No. 918. On December 29, 2020, Plaintiff Moeljono Khan filed a Motion to Seek Urgent Court Intervention to Protect Minor Litigant from Interference with Legal Representation. ECF No. 14. The competing motions essentially dealt with the same subject matter, and as such the Court issued a briefing schedule permitting an opposition to be filed by Ribbeck et. al. by January 22, 2020, with a reply to be filed by Plaintiff Moeljono on January 29, 2020. On January 23, 2020, Ribbeck Law Chartered filed its opposition brief a few hours late. Case No. 18-cv-07686, ECF No. 938. (Counselor Singh, out of respect for his colleague Mr. Bartlett, permitted the late filing but notes it as further evidence of the last minute scramble by Ribbeck to justify Ribbeck's tenuous positions with a last minute marriage of two minors.)

### B. Ribbeck's Longstanding Plan to Leverage Client Representation with The Threat of Minor Emancipation

Plaintiff Moeljono Khan engaged Sanjiv N. Singh, APLC ("SNS") and Indrajana Law Group, APLC ("ILG") on July 13, 2020 to represent Plaintiff Khan, his wife, and the minor A.R.N. for whom he is and was at that time legal guardian. Agustina Decl. at ¶ 7; Request for Judicial Notice (ECF No. 14) Exhibit B. On July 15, 2020, Plaintiff Khan's Indonesian counsel, Ms. Susanti Agustina, received a communication from Ms. Chua, an Indonesian agent of Ribbeck Law Chartered. *Id.*, Exhibit 1. Ms. Chua asked Ms. Agustina to ask Mr. Khan to terminate SNS and ILG, and sign an engagement agreement with Manuel Ribbeck, and stated that "Manuel Ribbeck would never act outside of the promise between Manuel and you." Ms. Chua further stated in the text to Ms. Agustina that, "[A.R.N.] would be 17 years old this year, and that he would have legal standing. He would be able to appoint Mr. Kasmali as his counsel, and that the guardianship order would no longer apply. Thus, from my point of view, Mr. Moel (Mr. Moeljono Khan) should sign the engagement while waiting for Manuel." *Id.* In other

words, Ribbeck used agents to pressure Mr. Khan to abandon Mr. Singh and Mr. Indrajana or face the supposed threat of emancipation and delay in his proceedings with Boeing. *Id.*

### C. Ribbeck Used Delay Tactics to Buy Time for A Sham Emancipation Plan

As the Court is aware per previous briefing, Ribbeck had inexplicably cancelled the previous mediation which had been scheduled for November 5, 2020. Declaration of Sanjiv Singh ("Singh Decl.") (ECF No. 12-2), at ¶¶ 12-15. After the hearing on December 30, 2021, by early January 2021, counsel for all the parties exchanged emails to schedule the upcoming mediation. Supplemental Declaration of Michael Indrajana ("Supp. Indrajana Decl.") at ¶ 3, Exhibit 2. On January 8, 2021, Mack Schultz, counsel for Boeing, sent an email proposing a mediation date on the week of February 8, 2021. *Id.* On January 8, 2021, Counselor Bartlett ultimately then proposed the mediation date for February 19, 2021, citing that Counselor Monica Ribbeck had a serious family emergency at the moment. *Id.* On the same day, Counselor Singh replied stating that the February 19, 2021 should be kept as a backup date, stated he would confirm his trial for that month was being taken off calendar, and requested February 12, 2021 as the mediation date. *Id.* Counselor Singh also expressed concern that the "medical emergency" reason by Monica Ribbeck seemed suspicious given that Ms. Ribbeck was invoking an emergency one month in advance. *Id.* The Court can draw its own conclusions about this obvious pattern of delay.

### D. Following Months of Delay, Ribbeck Unveils the Purported Underage Marriage of A 17-Year-Old Teenager to A 16-Year-Old Girl

As part of the long-awaited opposition brief where one would have hoped for some respectable credible explanation for why the mediation of November 5, 2020 was summarily cancelled, Ribbeck has now submitted documents and exhibits purporting that the 17-year-old A.R.N. has suddenly legally married a 16-year-old minor A.R.T.H. Case No. 18-cv-07686, ECF No. 938 and 939. Ribbeck has attached a letter purported to be issued from the Indonesian Office of Religious Affairs ("IORA"), in which the purported letter claims that the 17-year-old A.R.N. and 16-year-old A.R.T.H. were married on January 20, 2021. Case No. 18-cv-07686, ECF No. 939, Exhibit D and Exhibit G.

Ms. Agustina promptly investigated the letter attached as Exhibit D to the Ribbeck Opposition and inquired with the IORA as to its authenticity. Mr. Meftahorahman[1], the chief of the IORA branch in Bubutan[2], confirmed in writing to Ms. Agustina that the letter provided in Exhibit D is indeed false and was not issued by his office. Agustina Decl. at ¶ 10, Exhibit 2. Mr. Meftahorahman further confirmed in the same written electronic message to Ms. Agustina that according to his inspection, his signature and stationery appear to have been photoshopped into the document, and it is fake. *Id.* On January 28, 2021, the IORA issued an official chronology letter summarizing the events surrounding A.R.N.'s application at the IORA, confirming that the A.R.N. application was rejected on January 25, 2021. Supplemental Request for Judicial Notice, Exhibits C and D. The IORA also issued the original letter dated January 16, 2021 which was merely an informational letter to A.R.N. listing requirements. Supplemental Request for Judicial Notice, Exhibit B. Mr. Meftahorahman has stated in writing that he believes the information letter signature and seal were lifted and forged into the letter submitted as Exhibit D by Ribbeck Law Chartered. See Supplemental Request for Judicial Notice, Exhibits B, C, and D; *cf.* Agustina Decl. at ¶ 10, Exhibit 2.

### III. ARGUMENT

As set forth below and in view of the facts above, the Court should affirm Plaintiff Moeljono's authority to settle all claims against Boeing for the benefit of A.R.N. As set forth below, the marriage of the two minors is legally null and void and likely never occurred before the IORA, and as such no emancipation has occurred.

**A. Plaintiff Moeljono Khan is still A.R.N.'s Legal Guardian Because A.R.N. has not reached the Age of Majority, and Is Not Legally Married Under Indonesian Law**

Plaintiff Khan's legal guardianship of the minor A.R.N. has been completely litigated to its final conclusion in the Indonesian District Court and Indonesian Court of Appeals (See previously submitted Request for Judicial Notice, ECF No. 13, Exhibits B, C, D, and F), and as a

---

[1] This is a single name without a first name as is sometimes seen in Indonesian names.
[2] Bubutan is the name of the Indonesian region (i.e., similar to a county) where the IORA branch is located.

matter of Indonesian law, the minor A.R.N. lacks the legal capacity to enter into a legal agreement with Ribbeck Law Chartered without his legal guardian's consent. *See* Harry Ponto[3] S.H., LLM.'s Expert Opinion ("Ponto Opinion"), ECF 12-1, Exhibit 7). The last minute attempt to effect a marriage of two minors must fail because it is predicated on forged documents, and the marriage is null and void.

> 1. **Plaintiff Khan's Legal Guardianship of A.R.N. has Been Fully Litigated to Completion in Both the Indonesian Court and Indonesian Court of Appeal**

Ribbeck's argument that Plaintiff Khan's legal guardianship is illegal has no merit and should not be entertained by this Court at this stage. Indeed, in its opposition brief, Ribbeck made the argument that Plaintiff Khan's legal guardianship is illegal because (1) Plaintiff Khan failed to notify Mrs. Harimami and Tandina when he filed for his petition; (2) Mrs. Harimami (as A.R.N.'s maternal grandmother) has a higher priority than Plaintiff Khan, and (3) Plaintiff Khan is not the preferred guardian of A.R.N., and that the guardianship should be either Mrs. Harimami (Plaintiff A.R.N.'s maternal grandmother) or Plaintiff Tandina (Plaintiff A.R.N.'s stepmother). *See* Tandina's Opposition, Case No. 18-cv-07686, ECF No. 947 at pp. 6-9. Each of these arguments is now irrelevant as the matter was fully litigated but the assertions are also tenuous and likely false.

First, Plaintiff Khan had no legal obligation to notify Plaintiff Tandina when she had no legal standing to petition as A.R.N.'s legal guardian. See Request for Judicial Notice (ECF No. 14) Exhibits B, C, D, and F. Plaintiff Tandina was never an interested party that required notice, and regardless of notice, Plaintiff Tandina filed her own petition to the Court and openly litigated the issue with Plaintiff Khan. *Id.* As such, the notion that Plaintiff Tandina had no notice is disingenuous when she has fully litigated the matter with Plaintiff Khan. *Id.* With respect to Mrs. Harimami, she had ample notice of the proceedings, and as a matter of fact, she appeared in

---

[3] Mr. Harry Ponto may have a supplemental declaration as well, which will support the opinion of the second expert Mr. David Tobing and reinforce Mr. Ponto's initial opinion. However, Mr. Ponto's supplemental declaration is not needed for the Court to rule.

Plaintiff Tandina's litigation as a witness. Agustina Decl. at ¶ 3(a); Request for Judicial Notice (ECF No. 13) Exhibits C, F.

It should be noted that the instant matter is factually and legally distinguishable from the *Soegiyono/Wiranofa* matter, in which SNS and ILG made the argument that the lack of notice in that case would render the proceedings illegal:

a. Unlike the *Soegiyono/Wiranofa* matter, in which Mr. Nurdin Semendawai in *Soegiyono/Wiranofa* litigated the proceedings in a completely different jurisdiction where the minors did not even reside, Plaintiff Khan sought the petition for legal guardianship in the proper venue where the minor A.R.N. and Plaintiff Tandina resided, and litigated the matter in good faith. ECF No. 523 at Section II-G.

b. Unlike Mrs. Harimami, Mrs. Rini Soegiyono never had the opportunity to appear in the proceedings, either as a party or as a witness. ECF No. 523 at Section II-G.

c. Unlike Mr. Nurdin Semendawai, where it is alleged that he falsely testified in the court proceedings that he was the sole provider and guardian for the minors, when in fact the care for the minors was almost exclusively done by Ms. Rini Soegiyono during the relevant period, Mr. Moeljono Khan never made any false statements to the court, litigated the matter in good faith, and prevailed on the merits of his case. ECF No. 523 at Section II-G; Request for Judicial Notice (ECF No. 13) Exhibits C and F.

Second, the arguments that Mrs. Harimami had a higher priority than Plaintiff Khan and therefore should have been the proper legal guardian, and that Mrs. Harimami is the preferred guardian by A.R.N., are incomplete at best and now legally irrelevant as the matter was fully litigated and appealed. Under Indonesian law, a legal guardian still needs to file for a petition to appoint themselves as legal guardian before the Court, and Mrs. Harimami never filed her petition for legal guardianship of A.R.N. See Agustina Decl. at ¶ 3; Declaration of Expert David M. L. Tobing, S.H., M. Kn ("Tobing Decl.") at ¶ 7(a)-(b) (attached as Exhibit 3 to the Supplemental Indrajana Decl. at ¶ 4, Exhibit 3). Instead, Mrs. Harimami appeared as a witness in the proceedings without ever filing a petition for guardianship herself. Agustina Decl. at ¶ 3(a);

Request for Judicial Notice (ECF No. 13) Exhibits C and F. For Ribbeck to now use the elder Mrs. Harimami as a tool and to argue that she is willing and able to serve as A.R.N.'s guardian when she had ample opportunity to do so and had participated in the litigation as a witness is disingenuous, and also inherently contradictory since Ribbeck is now also trying to urge emancipation via a sham marriage of two minors.

With respect to Plaintiff Tandina, she has fully litigated her petition to cancel Plaintiff Khan's legal guardianship all the way to the Indonesian Court of Appeal and lost both at the District Court level and at the Appeals level because she has no legal standing to become A.R.N.'s legal guardian because of her status as his step-mother who is not a blood related kin. See Request for Judicial Notice (ECF No. 14) at Exhibits B, C, D, F; Agustina Decl. at ¶ 3; Tobing Decl. at ¶ 7. Furthermore, Plaintiff Tandina did not timely file her notice of appeal to the Indonesian Supreme Court, and therefore, she is now barred from appealing the Indonesian Court of Appeal decision affirming Plaintiff Khan's legal guardianship. Agustina Decl. at ¶ 3. Because Plaintiff Tandina lacked legal standing, even if the minor A.R.N. preferred Plaintiff Tandina as his legal guardian, she would not have been eligible to serve as a legal guardian as a matter of law. Tobing Decl. at ¶ 7.

    **2. A.R.N.'s Purported Marriage Attempt Does Not Comply with the Requirements of Underage Marriage Under Indonesian Law.**

It is undisputed that A.R.N. is a minor and currently is 17 years of age. Indonesia recently raised the minimum legal age for marriage to nineteen years of age for both men and women. Tobing Decl. at ¶ 6(b); see also Supplemental Request for Judicial Notice, Exhibit A. Under Indonesian marriage law, if a person under 19 years of age wishes to legally marry, he or she must have both (1) the consent of his or her parents or guardians, and (2) dispensation from the court to allow the marriage to proceed. *Id.*

In this case, Plaintiff Moeljono Khan, as A.R.N.'s legal guardian, never gave consent for the 17-year-old A.R.N. to be married to the 16-year-old A.R.T.H. Khan Decl. at ¶ 4. Indeed, this common sense outcome should be sufficient to deter any underage marriage attempts by A.R.N., and this is confirmed by the Indonesian Office of Religious Affairs ("IORA") that issued a denial

letter to A.R.N. on January 25, 2021, specifically citing the denial was due to A.R.N. not meeting the legal age requirement. See Supplemental Request for Judicial Notice, Exhibit C. Furthermore, without Plaintiff Khan's consent, it would be impossible for A.R.N. to obtain a dispensation from the court because as discussed previously, he lacks the legal capacity to seek his own dispensation before the court, and the only person who has the legal capacity to do so would be his legal guardian Plaintiff Khan. *See* Ponto Opinion, ECF No. 12-1 at Exhibit 7; Tobing Decl. at ¶¶ 7-8.

Against this backdrop, it should be apparent to the Court that any attempt for A.R.N. to legally marry under Indonesian law would be impossible without ***both*** Plaintiff Khan's consent and Plaintiff Khan obtaining a Court Dispensation to allow A.R.N. to legally marry given his age. As such, there should be no question that Ribbeck has not met the burden to show that A.R.N. has legal standing because he is not legally married as of this reply or for that matter at any time relevant to this matter and cannot be legally married without Plaintiff Khan's consent.

### 3. The Purported Letter from the Indonesian Ministry of Religious Affairs Submitted by Ribbeck is a Forgery and Should be Excluded

As part of their opposition brief, Ribbeck submitted as Exhibit D a purported letter from the Indonesian Office of Religious Affairs ("IORA") stating that "the marriage has been truthfully conducted between [A.R.N.] and [A.R.T.H.]" ECF No. 948, Exhibit C. On its face, the letter is a blatant contradiction of the prevailing Indonesian laws on marriage and could not have been issued by IORA given Plaintiff Khan's lack of consent. Upon thorough and granular investigation conducted by Plaintiff Khan's U.S. and Indonesian Counsel, it became apparent that the letter was in fact, a forged letter and was never issued by the IORA. Indeed, the IORA released the original letter issued to A.R.N., dated January 16, 2021, and the original letter merely stated that the IORA is attaching the list of the requirements for submission of marriage registration. Supplemental Request for Judicial Notice, Exhibit B. The IORA official who signed the original letter, Mr. Meftahorrahman, S.AG., confirmed that the letter submitted to the Court as Exhibit D was inauthentic, and that his signature and IORA's stationery were forged. Agustina Decl. at ¶ 10(b), Exhibit 1. Indeed, a brief summary of the material alterations of the letter reveal

numerous indices of forgery: (i) The official letter bears the case number B.112/Kua/13.29.04/PW.01/1/20. In contrast, the document provided by Ribbeck Law Chartered has 077 13.29.04/PW.01/1/2021, with the 077 being hand-written to the document; (ii) The stamped seal on Exhibit D is blurry, and Mr. Meftahorrahman's salutations and title are truncated when compared to the official version (such that the English translation attached by Ribbeck as Exhibit G conceded that the signature illegible); (iii) The false document contained significant typographical errors, including improper use of capitalization, and spelling errors of the name of Permadi Anggrimulja; (iv) The false document omits and/or alters the citizenship status of both A.R.N. and A.R.T.H; (v) The false document alters A.R.T.H.'s occupation from "not employed" to "college student."; and (vi) The false document places the date and city near the bottom of the letter, while in the official letter, the date and city are located at the top right-hand portion of the document. Agustina Decl. at ¶ 10. Moreover, Mr. Meftahorrahman, acting in his official capacity as an officer of IORA, has deemed the letter a forgery. Agustina Decl. at ¶ 10(b), Exhibit 2.

Furthermore, as discussed in the previous section, the IORA issued a denial letter to A.R.N. on January 25, 2021, specifically stating that the denial was due to A.R.N. not meeting the legal age requirement. See Supplemental Request for Judicial Notice, Exhibit C. As such, the Court should exclude Exhibit D of Ribbeck' submission as an outright forgery.

**4. The Court Should Not Tolerate any Further Delay from Ribbeck Law**

It should be apparent to the Court by now that A.R.N.'s underage marriage is a sham effort by Ribbeck to form an improper attorney-client engagement with a represented minor. As such, any delay to date by Ribbeck should be construed as an attempt to buy time to try to push forward with A.R.N.'s underage marriage without his guardian's consent. Indeed, when the parties attempted to schedule for mediation on January 8, 2021 in light of this Motion's briefing schedule, Counsel for Tandina claimed that Monica Ribbeck has a serious family emergency that would prevent her from attending mediation until February 19, 2021, from the original proposed dates of the week of February 8, 2021. Indrajana Decl. at ¶ 3, Exhibit 2. It is now apparent what

Ribbeck Law Chartered was planning to do from the beginning, and this was also the likely reason for the cancellation of the November 5 mediation.

### B. The Expert Witness for the Ribbeck Firm Should be Disqualified

The Court should disqualify Mr. Tomson Barutu as an expert witness and exclude his legal opinion attached as Exhibit A to the Declaration of Austin Bartlett (ECF No. 948, Exhibit A). As submitted, Mr. Barutu's credentials lack the necessary qualifications for an expert witness, especially where his credentials were based on a career without any notable milestones, books, accomplishments, or legal victories as a general civil law practitioner[4]. *Id.* Indeed, Mr. Barutu would not be considered nor qualify as an expert in an Indonesian Court of Law. *See* Tobing Decl. at ¶ 5. Under the commonly accepted practice in Indonesian Civil Court Procedure, an expert must have both significant academic and practice credentials. Specifically, Mr. Barutu's credentials submitted by Ribbeck showed that Mr. Barutu lacks on both fronts, with very little to none of the specialized education, training, or practical experience required to provide expert testimony on the subject matter, and Mr. Barutu has no academic appointment, advanced degree or academic credentials of any kind that would qualify him. *Id.* Mr. Barutu's record should be contrasted with Plaintiff Khan's expert witnesses, where both of Plaintiff Khan's experts have the necessary extensive academic and specialized education, training, and practical experience to provide expert testimony on the subject matter, and both experts are extremely well regarded and known in the Indonesian legal community. See Tobing Decl. at ¶ 2; See also Ponto Opinion, Exhibit 7 on the Declaration of Michael Indrajana, ECF No. 12-1.

Furthermore, Mr. Barutu's legal opinion is substantively defective on nearly all the key issues analyzed in his opinion or concedes on key issues. First, Mr. Barutu conceded that under Indonesian law, the minimum age for a person to have legal capacity is 21 years old.

---

[4] With all due respect to Mr. Barutu, upon reading his credentials submitted by Ribbeck Law, it is very clear that Mr. Barutu was not adequately prepared or warned in advance that he would be presented as an expert witness. Mr. Barutu has no practice or expert website, and his only web presence is a Facebook page. Indrajana Supp. Decl. at ¶ 5, Exhibit 4. The Facebook page speaks for itself – he is not an expert in any discernable field.

Tobing Decl. at ¶ 6(a). Second, Mr. Barutu failed to cite the correct Indonesian Code on Marriage that raised the minimum age of legal marriage to 19 years old. Tobing Decl. at ¶ 6(c). Third, Mr. Barutu's analysis that Plaintiff Khan's legal guardianship is questionable is incorrect. Tobing Decl. at ¶ 7. Specifically, Mr. Barutu focused his analysis on the minor's preference of the guardian being critically important but failed to analyze the fact that in this case, the preferred guardian candidates either refused to serve as a guardian by not filing a petition for guardianship (Mrs. Harimami's case), or simply do not qualify as a guardian under Indonesian law (Tandina's case). *Id.* Furthermore, in Tandina's case, Mr. Barutu failed to analyze the fact that Tandina did not file a timely appeal to the Indonesian Supreme Court, and the decisions are now final. Agustina Decl. at ¶ 3; Supplemental Request for Judicial Notice, Exhibit A. It is also notable that Mr. Barutu's "opinion" is in fact nothing more than a letter, without even verification or oath, to the counsel who found him and paid him. Tobing Decl. at ¶ 5.

Against the backdrop of Mr. Barutu's lack of qualification, which understandably explains the substantive defects of his legal opinion, the Court should disqualify Mr. Barutu and exclude his legal letter (which is essentially hearsay or non expert opinion) submitted by Ribbeck Law Chartered.

**C. The Court Should Issue an Order Enjoining Ribbeck And His Agents from Further Ex Parte Contact with A.R.N., who is Represented by SNS and ILG**

At the very basic and urgent level, as initially moved on December 29, 2020, the Court needs to issue an immediate order to enjoin Ribbeck and his agents from any further *ex parte* contact with A.R.N. who is represented by SNS and ILG. It is unlawful and unethical for Ribbeck and their agents to engage in *ex parte* communications with A.R.N., who is a minor plaintiff represented by SNS and ILG. Moreover, Ribbeck has no right at all to communicate with A.R.N. given that (1) Tandina has no legal standing as a matter of Indonesian law to ever become A.R.N.'s legal guardian, and (2) Ribbeck and its agents have committed numerous improper acts to improperly gain control of A.R.N.'s share of the decedent's estate to maximize their attorney's fees. *See* Singh Decl. (ECF No. 12-2) at ¶¶12-15; Indrajana Decl. (ECF No. 12-

1) at ¶¶ 10-15; Exhibits 7-10; see also Agustina Decl. at ¶¶ 5-11. It is exceedingly clear that Ribbeck does not care about the interests of the minor—if he did, he would not have thwarted the November 5, 2020 mediation, or further delay the February 2021 mediation. It is now apparent that the only conceivable reason to delay the mediations was so that Ribbeck could try to manufacture a pretext to claim a larger share of legal fees, and at this stage, to do so by pushing forward an underage marriage between A.R.N. and A.R.T.H. *See* Plaintiff Tandina's Opposition, Case 18-cv-07686 ECF No. 947, pp. 5-9. Ribbeck now has a track record of delaying not one, but two mediations to improperly emancipate A.R.N. from Plaintiff Moeljono. Singh Decl. at ¶¶ 12-15, ECF No. 12-2; see also Indrajana Supp. Decl. at ¶ 3, Exhibit 2.

### D. The Court Should Sanction Ribbeck for Its Conduct to Ensure that the Misconduct Does Not Continue

At this point in time, it is beyond dispute that Plaintiff Moeljono Khan is the legally recognized guardian for A.R.N., and Indonesian Courts have recognized this on every single legal proceeding involving A.R.N. *See* Request for Judicial Notice, ECF No. 13, Exhibits B, C, and F. Ribbeck knew this, and despite this, acted to communicate with a minor client of SNS and ILG ex parte. *See* Singh Decl. (ECF No. 12-2) at ¶¶12-15; Indrajana Decl. (ECF No. 12-1) at ¶¶ 10-15; Exhibits 7-10. Given the overall timing and sequence of events, and the July 15, 2020 communication to Ms. Agustina regarding its blatant plans to emancipate A.R.N (Agustina Decl. at ¶ 7, Exhibit 1), it is now reasonably believed that Ribbeck participated in and orchestrated a long-term plan to interfere with a minor's representation for the sole purpose of legal fees. The Court can draw its own conclusions, but Plaintiff Khan and his counsel believe the facts are strongly suggestive of unethical practice and should be met with stern sanction.

### E. Under Illinois Law, Minor A.R.N. Has Not Reached Age of Consent

Throughout this motion practice, Plaintiff Tandina's counsel have tried to disrupt current legal representation with arguments related to age of consent and emancipation in Indonesia. We have set forth above the factual and legal basis as to why their arguments should be rejected. That said, even if Tandina's counsel intends to continue to use strategic delay and further disruptive activities in Indonesia for monetary gain, it is undisputed this Court has the authority

to protect the interest of the minor and to apply Illinois law in doing so. The Court is now in a position not only to conclude under Indonesian law that the minor A.R.N. has not been emancipated and therefore is still represented by SNS and ILG vis-à-vis Plaintiff Khan as his legal guardian, but the Court may also find additional authority under Illinois law where minor A.R.N. is a minor before the eyes of this Court. *See* 755 ILCS 5/11-1 (West 2019); see also *Tersavich v. First Nat'l Bank & Trust Co.*, 551 N.E.2d 815, 817 (Ill. App. Ct. 1990). The Court has exercised its inherent power previously in this Boeing matter to protect the interests of minors under the age of 18 with settlement orders tightly controlling costs and disbursements. *See e.g., Aprilia v. The Boeing Company*; *Soegiyono v. The Boeing Company; Oktaviani, et al. v. The Boeing Company.* The burden was on Tandina's counsel to present evidence to show that there had been a legally enforceable emancipation or that minor A.R.N. was legally able to consent to a legal engagement with Ribbeck at the age of 17. Tandina's counsel has failed to do so, and therefore the Court should adhere to its practice in this matter and the laws of Illinois, which would view Plaintiff Moeljono Khan as the legal representative for minor A.R.N.'s interest in this matter. Furthermore, the Court should issue an order permitting SNS and ILG to move forward with Boeing assuming Boeing is still interested in doing so, to settle the claims of Plaintiff Moeljono Khan, his wife, and minor A.R.N. Plaintiff Tandina is welcome to join this mediation so all claims can be settled at the same time. However, no further delay or interference should be permitted by Tandina's counsel, and if Tandina does not wish to participate, the remaining parties should be free to settle separately without further interference.

## IV. CONCLUSION

In view of the above, Plaintiff, through undersigned counsel, respectfully and urgently requests the Court to order Ribbeck Law Chartered to cease in their efforts to interfere with the minor A.R.N.'s claims against Boeing and permit SNS, ILG and The Boeing Company to mediate the minor's case and claims of the other adult heirs. Boeing has indicated that it will consider separate settlements if Tandina does not want to participate in a global effort; SNS and

ILG believe that the settlement of the minor A.R.N.'s claims and other adult claimants should not be delayed further.

Dated: January 29, 2021                                      Respectfully Submitted,

/s/ Sanjiv N. Singh

Sanjiv N. Singh, A PLC
(*specially appearing*)
1650 S. Amphlett Blvd. Suite 220
San Mateo, CA 94402
Phone: (650) 389-2255
ssingh@sanjivnsingh.com


/s/ Michael B. Indrajana

Indrajana Law Group a PLC
1650 S. Amphlett Blvd. Suite 220
San Mateo, CA 94402
Phone: (650) 597-0928
michael@indrajana.com
*admitted Pro Hac Vice*


/s/ Mazyar M. Hedayat

M. Hedayat & Associates, P.C.
1211 W. Lakeview Court
Romeoville, IL 60446
Phone: (630) 378-2200
Fax: (630) 447-0067
mhedayat@mha-law.com